IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DARRION LARRY ALEXANDER,

Plaintiff, No. CIV S-03-288 DFL GGH P

vs.

EDWARD S. ALAMEIDA, JR., et al.,

Defendants. FINDINGS & RECOMMENDATIONS

_______________________________/

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' summary judgment motion filed February 22, 2005. After carefully considering the record, the court recommends that defendants' motion be granted in part and denied in part.

SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions

> on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the

nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

On October 28, 2003, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

/////

/////

DISPUTED AND UNDISPUTED FACTS

This action is proceeding on the amended complaint filed May 23, 2003. The defendants are Edward Alameida, Warden Pliler, Correctional Officers Ash, Walizer, Watcher and Eck.

The following facts are undisputed. Beginning in November 2002 plaintiff was housed in Facility A, Building 5, Cell 108 of California State Prison-Sacramento. During that time, the toilet in plaintiff's cell leaked water. See Plaintiff's Deposition, p. 37-38.[1] On December 30, 2002, plaintiff slipped on water and fell in his cell when he tried to get his breakfast. Plaintiff had not turned the light on in his cell when he fell. On January 3, 2003, plaintiff slipped on water again. Plaintiff suffered from a lower lumbar strain as a result of this fall. After November 9, 2002, plaintiff made numerous complaints to defendants Eck, Watcher and Ash regarding the water leaking in his cell.[2] On December 16, 2002, December 30, 2002, and January 3, 2003, work orders were submitted to maintenance to repair the leaky toilet. Maintenance staff completed the work requested on the days the work orders were submitted.

The parties dispute the number of times plaintiff complained about the leak in his cell to defendant Walizer. In his verified complaint, plaintiff alleges that he made numerous complaints to defendant Walizer after November 9, 2002, regarding the water in his cell. In his declaration, defendant Walizer states that on December 30, 2002, he made a maintenance request for plaintiff's cell, but he does not recall if plaintiff requested any repairs to his cell prior to that time. Walizer declaration, ¶ 7.

/////

[1] In his verified complaint, plaintiff alleged that the water was smelly. At his deposition, plaintiff testified that the water was not smelly. In his opposition, plaintiff now alleges that raw sewage leaked into his cell. Because plaintiff's opposition is not verified, the court will not consider this claim. Fed. R. Civ. P. 56(e).

[2] No declarations from these defendants were filed in support of the summary judgment motion.

The parties dispute the amount of water that leaked from the toilet onto the floor in plaintiff's cell. At his deposition, plaintiff testified that the day after he was placed in Cell 108, he woke up and "the floor was like filled with water all on the bottom." Plaintiff's Deposition, p. 10. Plaintiff also testified that the amount of water that leaked was the same amount every day but once it came past his bed. Id., p. 25. Plaintiff also testified that sometimes he pushed the water outside of his cell so that it would go down the drain on the floor outside of his cell. Id., p. 38.

The only evidence submitted by defendants regarding the amount of water leaking into plaintiff's cell is contained in the declaration of defendant Walizer. Defendant Walizer states that On December 30, 2002, he observed a small puddle of water on the floor around the toilet area in plaintiff's cell. Walizer decl., ¶ 4.

DISCUSSION

The amended complaint contains two legal claims: 1) defendant Alameida violated his right to due process by not timely responding to his administrative grievance regarding the water in his cell; 2) the conditions of his cell violated the Eighth Amendment.

*Eighth Amendment*

Defendants argue that they are entitled to summary judgment on the merits of plaintiff's claim and on qualified immunity grounds. For the following reasons, the court finds that defendants are entitled to qualified immunity.

The determination of whether a prison official is entitled to qualified immunity is a two-step test. Saucier v. Katz, 533 U.S. 194, 201, 121 S. Ct. 2151 (2001). In the first step, the court views the record in the light most favorable to the party asserting injury to determine whether the officer's conduct violated a constitutional right. Id. If the plaintiff establishes the violation of a constitutional right, the court next considers whether that right was clearly established at the time the alleged violation occurred. Id. The contours of the right must have been clear enough that a reasonable officer would have understood that what he was doing

violated that right. See Anderson v. Creighton, 483 U.S. 635, 640, 107 S. Ct. 3034 (1987).

Prisoners alleging Eighth Amendment violations based on unsafe conditions must demonstrate that prison officials were deliberately indifferent to their health or safety by subjecting them to a substantial risk of serious harm. Farmer v. Brennan, 511 U.S. 825, 833, 114 S. Ct. 1970, 1977 (1994). Prison officials display a deliberate indifference to an inmate's well-being when they consciously disregard an excessive risk of harm to that inmate's health or safety. Farmer, 511 U.S. at 837-838, 114 S. Ct. at 1979-80.

In Osolinski v. Kane, 92 F.3d 934 (9th Cir. 1996) a prisoner brought a § 1983 action claiming that the failure of prison officials to repair an oven, the door of which fell off and burned his arm, violated the Eighth Amendment. In its qualified immunity analysis, the Ninth Circuit did not reach the issue of whether the facts alleged showed that the prison officials acted with deliberate indifference. 92 F.3d at 937. Instead, the court determined whether, in light of clearly established principles at the time of the incident, the officials could have believed their conduct was lawful. Id.

In Osolinski, the Ninth Circuit found that it was not clearly established that a single defective device, without any other conditions contributing to the threat of an inmates' safety, created an objectively insufficiently inhumane condition to be violative of the Eighth Amendment. 92 F.3d at 938. In reaching this finding, the Ninth Circuit cited several cases which held that minor safety hazards did not violate the Eighth Amendment: Tunstall v. Rowe, 478 F. Supp. 87 (N.D.Ill. 1979) (the existence of a greasy staircase which caused a prisoner to slip and fall did not violate the Eighth Amendment); Snyder v. Blankenship, 473 F. Supp. 1208, 1212 (W.D.Va. 1979) (failure to repair leaking dishwasher which resulted in a pool of soapy water in which prisoner slipped did not violate Eighth Amendment); Robinson v. Cuyler, 511 F. Supp. 161, 163 (E.D.Pa. 1981) ("[a] slippery kitchen floor does not inflict 'cruel and unusual punishments'"). Based on the relevant law, the Ninth Circuit concluded that a reasonable prison official could have believed that the failure to repair an oven as alleged did not violate the Eighth

Amendment.

On the other hand, different panels sometimes see things differently. In Frost v. Agnos, 152 F.3d 1124, 1129 (9th Cir. 1998), the Ninth Circuit found that slippery floors could constitute a condition of deliberate indifference. Frost v. Agnos, 152 F.3d 1124, 1129 (9th Cir. 1998).

Plaintiff's complaint suggests two Eighth Amendment claims. First, he is challenging the approximate five week delay between when he first requested the repair (November 9, 2002) and when the first repair was attempted (December 16, 2002). Second, plaintiff is challenging the three unsuccessful attempts to fix the leak.

Utilizing the Saucier paradigm, the court first determine whether plaintiff has stated a constitutional violation. Viewing the facts most favorably in light of plaintiff, as the court must, and accepting his characterization of the amount of water on the floor in what is undisputedly a very small cell, plaintiff has asserted a colorable constitutional violation. As to the second prong of the qualified immunity analysis, whether officers should have reasonably known that a five week delay in obtaining assistance to stop the leak, the court is bound by Frost, and concludes that this is a jury question. Summary judgment should be denied on this question.

Plaintiff next challenges the plumbers' failure to fix the leak on the three occasions they worked on his toilet. The basis of plaintiff's claim against defendants with regard to these repairs is unclear. Plaintiff may be claiming that defendants had a duty to make sure that the repairs were adequately performed.

In the qualified immunity analysis of this claim, the court will first consider whether defendants' conduct violated the Eighth Amendment. The undisputed record indicates that plumbers attempted three repairs of plaintiff's toilet within nineteen days. The plumbers were apparently responding to requests from prison officials to repair the leak. This record indicates that defendants did not disregard the leak and followed up when the repairs were unsuccessful. Therefore, their conduct did not violate the Eighth Amendment and the qualified

immunity analysis ends as to this claim.

For the reasons discussed above, defendants should be granted summary judgment as to plaintiff's Eighth Amendment claim, only in part, on grounds that they are entitled to qualified immunity.

*Due Process*

Defendants move for summary judgment as to plaintiff's due process claim against defendant Alameida. Plaintiff alleges that defendant Alameida did not respond to his administrative appeal concerning the leak in his cell.

Inmates lack a separate constitutional entitlement to a specific prison grievance procedure. Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003). Accordingly, defendant Alameida should be granted summary judgment as to the claim that he violated plaintiff's right to due process by failing to timely respond to his administrative appeal.

*Defendants Alameida and Pliler*

Defendants also move for summary judgment as to defendants Alameida and Pliler on grounds that they had no personal involvement in the alleged Eighth Amendment violations.

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that *causes the deprivation of which*

*complaint is made*." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). Vague and conclusory allegations concerning the involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

In the complaint, plaintiff alleges that defendant Warden Pliler was aware of the leak in his cell but failed to order repairs. The only allegation against defendant Alameida is that on February 13, 2003, plaintiff sent him an administrative appeal regarding the conditions in his cell to which he did not timely respond. At his deposition, plaintiff testified that defendant Pliler never saw the water in his cell and he never personally spoke with her about his cell. Plaintiff's Deposition, p. 35. He also testified that he sued defendants Pliler and Alameida because they were supervisors. Id., pp. 35-36. Given the relatively short time span that the leak went unremedied, the court cannot find those supervisors to have "caused" the deprivation in any meaningful sense.

Plaintiff has presented no evidence demonstrating that either defendants Pliler or Alameida personally participated in the alleged deprivations. Rather, he is basing their liability on the theory of respondeat superior. Accordingly, defendants Pliler and Alameida should also be granted summary judgment as to plaintiff's Eighth Amendment claim for these reasons in addition to qualified immunity.

Accordingly, IT IS HEREBY RECOMMENDED that defendants' February 22, 2005, summary judgment motion be granted as to defendants Alameida and Pliler, but denied with respect to defendant Ash, Walizer, Watcher and Eck, insofar as plaintiff asserts a delay in

obtaining a plumber's assistance to fix the leak.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 9/2/05

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

ggh:kj
alex288.sj